Clifford J. Straehley and Oriel C. Straehley v. Commissioner. Clifford J. Straehley v. Commissioner.
Straehley v. Commissioner
Docket Nos. 41431, 50077, 50078.
United States Tax Court
T.C. Memo 1955-116; 1955 Tax Ct. Memo LEXIS 224; 14 T.C.M. (CCH) 415; T.C.M. (RIA) 55116; May 6, 1955
*224 Upon the facts, held: 1. [Reconstruction of income: Net worth method.] Respondent was not justified in reconstructing petitioner's taxable net income by use of the net worth method. 2. Fraud penalties disallowed. Robert N. Gorman, Esq., 808 Traction Building, Cincinnati, Ohio, for the petitioners. Lyman G. Friedman, Esq., and R. G. deQuevedo, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined deficiencies in income tax and 50 per cent additions thereto for fraud under section 293(b) of the 1939 Code for the years 1946, 1948, 1949 and 1951, as follows: Year
Deficiency
Sec. 293(b)
1946
$31,731.89
$15,865.95
1948
7,143.80 [1]
3,696.90
1949
2,279.72
1,139.86
1951
3,627.84
1,813.92
The Commissioner determined the amounts of taxable net income by use of the increase in net worth and expenditures method. The income tax deficiencies *225 result from such determinations of net income. The issues to be decided are as follows: (1) Whether it was proper for the respondent to resort to the net worth method. (2) If so, whether respondent correctly determined the petitioner's taxable net income for the years 1946, 1948, 1949, and 1951 by use of the net worth method. (3) Whether part of any deficiency is due to fraud with intent to evade tax. The returns were filed with the director for the first district of Ohio in Cincinnati. Findings of Fact Petitioners reside in Cincinnati, Ohio. Clifford J. Straehley filed an individual return for 1946. Joint returns were filed for 1948, 1949, and 1951. Oriel C. Straehley is involved only because joint returns were filed. The issues presented relate to transactions involving only Clifford J. Straehley. He is referred to hereinafter as the petitioner. Petitioner is a physician. He has practiced his profession in Cincinnati, Ohio, since 1920. He is a specialist in cardiology. Petitioner was born in 1896. He was graduated from Harvard University in 1916, and from the University of Cincinnati Medical School in 1920. He took a graduate course in medicine at Harvard University in *226 1928. He studied in Europe during a part of each of the years 1927, 1929, 1930, 1932, and 1934. He has lectured at Good Samaritan and Bethesda Hospitals. During the years 1946 through 1951 petitioner maintained two residences one in Cincinnati, Ohio, and the other in Asheville, North Carolina. He spent approximately 60 per cent of his time in Cincinnati and 40 per cent in Asheville, making frequent trips between the two cities. Petitioner purchased his residence in Asheville in 1945. He did not practice medicine in Asheville. Petitioner maintained three checking accounts during the period in question; one at The Provident Savings & Trust Co. of Cincinnati, hereinafter referred to as the Provident Bank; one at the Atlas National Bank of Cincinnati; and one at Wachovia Bank & Trust Co. of Asheville, North Carolina. He did not have any savings account in any bank. Petitioner maintained a safe-deposit box in his own name at the Provident Bank prior to and during the years 1946 through 1951. Petitioner's wife had access to his box. In addition, petitioner had access to safe-deposit boxes at the Provident Bank rented in the name of Linton Securities Company, which represents a name *227 used by the family in connection with security transactions, and resembles the name of a nominee. Petitioner kept in his safe-deposit box personal papers, insurance policies, stock certificates, municipal bonds, and cash. Petitioner did not keep any record at any time of the amounts of cash in his safedeposit box, the sources of such cash, or the disposition by him of cash withdrawn from the lock box. Petitioner's principal sources of taxable income during the period 1946 through 1951 were his medical practice, stock dividends, and gains from sales of stocks and municipal bonds. He also received nontaxable income during this period from inheritance and the proceeds from an insurance policy. Petitioner has employed the same person as an office nurse and bookkeeper since 1928. During the years involved, petitioner's records of income from and expenses of his medical practice consisted of a card file system and a cash book. Petitioner also used his checking account at the Provident Bank in connection with his medical practice. Petitioner's records of professional income and expenses were kept by his office nurse. The gross receipts and net income from petitioner's medical practice *228 as shown by his books and reported in his returns for cash of the taxable years were as follows: Gross receipts
Net income
from
from
Year
profession
profession
1946
$23,679.25
$12,753.98
1948
18,250.00
6,367.69
1949
14,750.00
2,733.75
1951
14,294.00
2,010.33 The gross and net income of petitioner's medical practice were correctly reported in the return filed for each of the taxable years. Petitioner owned corporate stocks as of December 31, 1945, (the starting point of respondent's net worth statement) which had a cost basis to him of $130,612.13. He made numerous purchases and sales of stocks in each of the years 1946 through 1951. The total cost, or basis, to petitioner of stocks owned by him as of December 31 of each of the years 1946 through 1951 was as follows: Year
Cost or basis
1946
$162,950.79
1947
160,622.24
1948
182,340.03
1949
167,667.57
1950
191,633.51
1951
160,331.50
The volume of petitioner's stock market transactions during the period 1946-1951, that is, the total amount of his purchases and sales of stock, exceeded $2,000,000. The following schedule [2] shows the cost of stocks purchased by petitioner *229 in each of the years 1946-1950, and the amounts of the proceeds received by him from sales of stocks in each of the years 1946-1951: Year
Cost
Proceeds from Sales
1946
$199,337
$ 223,929
1947
71,868
75,998
1948
138,208
130,534
1949
140,085
144,015
1950
334,425
347,794
1951
*
250,896
Totals
$883,923
$1,173,166
Petitioner did not deposit the proceeds from the sales of stocks in any bank account, and he did not pay for purchases of stocks with checks drawn on any of his bank accounts. He did not keep a cash balance in any of the brokerage accounts. Any cash balances due petitioner from brokerage firms were remitted to him by checks. Petitioner ordinarily cashed checks received from brokers and placed the proceeds in his safe-deposit box. Petitioner usually paid for purchases of stocks with cashier's checks which he obtained for cash from the Provident Bank. All of the cashier's checks were made payable to him. He endorsed cashier's *230 checks and gave them to brokers in payment for purchases of stocks. During the years 1946 through 1951, [3] the Provident Bank issued to petitioner 122 cashier's checks in the total amount of $492,875.73, with one exception which is not material. The following schedule shows the total amount of such checks which were issued to petitioner in each of the years 1946-1951, inclusive: Total amount
Year
No. of checks
of checks
1946
36
$151,840.61
1947
20
61,174.04
1948
20
97,872.34
1949
15
51,029.60
1950
25
111,256.85
1951
6
19,702.29
Totals
122
$492,875.73
Of the 122 checks, 77 were endorsed by petitioner to brokerage firms; the total amount of the 77 checks was $312,551.65. The following schedule shows the total amounts of cashier's checks endorsed by petitioner and given to brokerage firms in each of the years 1946-1951: No. of
cashier's checks
endorsed to
Year
brokerage firms
Total amount
1946
21
$ 78,059.69
1947
14
44,174.04
1948
9
54,785.15
1949
14
50,555.48
1950
18
81,835.94
1951
1
3,141.35
Totals
77
$312,551.65
*231 Petitioner's records of his stock market transactions consisted of the broker's slip for each purchase or sale of stock. Petitioner did not keep any record of the source and amount of cash in his safe-deposit box at any time, and he did not keep any record of the source of the funds with which he purchased cashier's checks made payable to brokers. Petitioner reported in his returns, dividends from stocks in each of the taxable years in the amounts set forth below. The respondent accepted as correct the amounts so reported: Dividend income
Year
reported
1946
$ 7,305.13
1948
12,501.15
1949
14,181.94
1951
15,185.26
Petitioner reported in his returns, net long-term capital gain (or loss), and net short-term capital gain (or loss) from the sales of stocks in each of the years, 1946, 1948, 1949, and 1951, in the amounts shown below. The respondent accepted as substantially correct the amounts of gain or loss, so reported: Year
Long-term gain
Short-term gain
1946
$36,276.85
[11,271.91)
1948
(4,427.18)
( 2,454.26)
1949
4,772.33
( 767.79)
1951
27,627.22
( 5,440.47)
Petitioner realized net long-term capital gain (or loss), *232 and net short-term capital gain (or loss) from the sales of stocks in each of the years 1946, 1948, and 1949, in the following amounts: Year
Long-term gain
Short-term gain
1946
$37,537.17
[17,227.35)
1948
(5,219.31)
( 2,454.26)
1949
3,055.20
874.88
1951
(not established by record)
The following schedule summarizes the adjusted gross income, non-business deductions, and net income as reported by petitioner in each of the taxable years: Adjusted gross income:
1946 *
1948 **
1949 **
1951 **
Net income from medical practice
$12,753.98
$ 6,367.69
$ 2,733.75
$ 2,010.33
Dividend income
7,305.13
12,501.15
14,181.94
15,185.26
Interest income
1,412.03
1,420.78
1,251.85
Income from annuities
81.29
81.29
81.29
81.29
Net income (or loss) from rents
(117.33)
(145.02)
Net gain (or loss) from sale of capital
assets
6,866.51
(1,000.00)
(1,000.00)
8,373.14
Total adjusted gross income as reported
$27,006.91
$19,244.83
$17,272.74
$26,901.87
Nonbusiness deductions claimed in returns
1,297.72
1,451.91
1,722.54
2,319.38
Net income as reported
$25,709.19
$17,792.92
$15,550.20
$24,582.49
*233 The respondent determined the amounts of petitioner's taxable net income for each of the years 1946 through 1951 by use of the annual increase in net worth and expenditures method. As a result, he determined that petitioner's net income as reported in his returns for each of the years 1946, 1948, 1949, and 1951 was understated, and he determined deficiencies for those years. The respondent's net worth statement did not indicate that petitioner realized income in 1947 and 1950 in excess of the amounts reported in his returns for those years, and he has accepted as substantially correct the returns for 1947 and 1950. Those years are not before us. The chief reason for respondent's resorting to the net worth method was because all of petitioner's stock market transactions were in cash, and the respondent was unable to trace the source and disposition of the amounts of cash involved. The respondent's net worth statement, Ex. 1A, is incorporated herein by this reference. The respondent did not include among assets in the net worth statement as of the end of 1945-1949, any amount for municipal bonds. He did not include among assets at the end of 1945, or of any subsequent year, any *234 amount for undeposited cash belonging to petitioner. As of December 31, 1945, the petitioner owned and possessed bonds of municipalities in Florida, Michigan, North Carolina, Ohio, and South Dakota. The total face amount of the bonds amounted to $126,000. The bonds were bearer bonds. The bonds were acquired by the petitioner at various times prior to December 31, 1945. He owned them at the end of 1945, and they were in his possession at that time. He kept them in a safety-deposit box. The bonds are listed in the following schedule. The bonds were sold to, or by, the Provident Bank, which has a bond department, during the years 1946, 1948, 1949, and 1950 for the total amount of $129,855.77. The following schedule sets forth the municipal bonds, the face values, the dates of sale, and the amounts received by petitioner: Date of Sale
Face Value
Bond
Received
March 29, 1946
$ 5,000
St. Augustine, Fla., 3% Ref.
$ 5,361.67
March 30, 1946
5,000
Clearwater, Fla., 3 1/2% Ref.
5,168.40
April 9, 1946
10,000
Ft. Lauderdale, Fla., 4% Ref.
12,558.89
June 10, 1946
10,000
Miami, Fla., 3 1/2% Ref.
11,579.58
August 1, 1946
5,000
Detroit, Mich., 4% Ref.
5,679.17
Nov. 20, 1946
10,000
Asheville, N.C., 2-4% Ref.
9,202.22
Nov. 20, 1946
10,000
St. Augustine, Fla., 3% Ref.
10,315.83
Feb. 4, 1948
12,000
West Palm Beach, Fla., 3% Ref.
11,343.00
Feb. 16, 1948
20,000
Ft. Pierce, Fla., 3-3 1/2% Ref.
17,975.00
March 9, 1948
6,000
Village of Amherst, O., 3/4% Ref.
6,375.00
May 27, 1948
1,000
Broward Co., Fla. S.D., Ref. 4%
1,031.22
Nov. 9, 1948
10,000
Akron, O., 3% Ref.
10,319.17
July 8, 1949
5,000
Escambia Co., Fla., 2 5/8% Ref.
4,840.05
Jan. 4, 1950
7,000
Broward Co., S.D., 4% Ref.
7,492.33
Jan. 4, 1950
5,000
Mobile, Ala., 3 1/2% Ref.
5,126.46
Jan. 24, 1950
5,000
Ft. Lauderdale, Fla., 4% Ref.
5,487.78
Totals
$126,000
$129,855.77
*235 The bonds, with one exception, were purchased by the bank; the Village of Amherst bond was sold by the bank as agent for the petitioner. The bank paid for the bonds by cashier's checks which were made payable to the petitioner. In some instances the payments were made in cash to petitioner. Both the cashier's checks and the cash were charged to the bond department of the bank upon the bank's records. Petitioner did not report gain or loss from the sales of the municipal bonds in his returns for the years 1946, 1948, 1949, and 1950. Petitioner did not retain broker's slips for the sales of the municipal bonds. The records of the sales of the municipal bonds were kept by the bank. The petitioner's books and records clearly reflected his income, except for gains or losses from the sales of municipal bonds. The respondent was not justified in reconstructing the petitioner's taxable net income by use of the annual increase in net worth and expenditures method. No part of any deficiency for the years 1946, 1948, 1949, and 1951 is due to fraud with intent to evade tax. Opinion Respondent determined deficiencies for the years 1946, 1948, 1949, and 1951 by use of the annual increase *236 in net worth and expenditures method. He reconstructed petitioner's taxable net income under this method for each of the years 1946 through 1951. However, the net worth statement did not indicate any unreported income in the years 1947 and 1950. Therefore, the respondent accepted petitioner's records for 1947 and 1950 as clearly and adequately reflecting his true income for those years; he accepted as substantially correct, also, the income tax returns which were filed for 1947 and 1950. Those years are not before us. Respondent also determined that part of the deficiency for each of the taxable years involved was due to fraud with intent to evade tax under section 293(b) of the 1939 Code. Petitioner contests respondent's resort to and use of the net worth method. He contends that he had and maintained books and records which clearly reflected his net income for the years in question, and that his returns for the years in dispute are substantially correct, as filed. He admits that there are certain errors in his returns for some of the taxable years, but he contends that such errors are not substantial and that they do not justify resort to the net worth method. He has given explanations *237 for some of the errors and appears to be willing to endeavor to settle them with the respondent at the time recomputations are made under Rule 50. Petitioner's explanation of the discrepancies between the amounts of his net income as reported in his returns, and as determined by respondent is that he owned and possessed municipal bonds in the face amount of $126,000 at the end of 1945, that he sold bonds during the years 1946, 1948, 1949, and 1950. He contends that if the bonds of the above value had been included by respondent in the net worth statement, practically all of the allegedly unreported net income would be wiped out. The real controversy in these proceedings is whether, at the end of 1945, petitioner owned and possessed municipal bonds in the face amount of $126,000. The parties now agree that bonds in the total amount of $126,000 were purchased by the Provident Bank in 1946, 1948, 1949, and 1950. Respondent did not include any amount of municipal bonds in the net worth statement at the end of 1945, or of any other year. He now contends that petitioner has failed to establish ownership of bonds. The question to be decided is a question of fact. Respondent does not *238 question the correctness of petitioner's records of income from his profession for the taxable years. He concedes that the amounts of professional income which were reported in the returns correspond to the records of income from petitioner's medical practice. He concedes that the amounts of petitioner's income, from dividends and other sources and from gains and losses from sales of stock, as reported in the returns for each of the taxable years, are substantially correct. But, the respondent claims that he could not trace the sources and the disposition of the amounts of cash involved in petitioner's stock transactions, which were substantial in amount, to any records kept by petitioner. He argues, also, that petitioner's standard of living, involving large expenditures, indicated that petitioner had income in the taxable years in excess of the amounts reported in the returns. He argues that use of the net worth method of determining taxable net income was justified because it seems to have revealed that there were substantial understatements of net income in the returns. Respondent recognizes that if the Court finds that municipal bonds were owned and sold by the petitioner in the *239 amounts claimed, the basis for his use of the net worth method and the validity of his determination of taxable net income fall. We are satisfied from the entire record and have found that petitioner owned municipal bonds in the face amount of $126,000 at the end of 1945, and the petitioner sold the bonds to the Provident Bank in the years 1946, 1948, 1949, and 1950 for the sums set forth in the Findings of Fact, and received the proceeds of the sales. Furthermore, we are satisfied from all of the evidence that the records kept by the petitioner were adequate and clearly reflected his income, and that the amounts of petitioner's income reported in the returns for the taxable years were substantially correct, except for gains from the sales of municipal bonds, a point which is discussed hereafter. It is held, therefore, that respondent's resort to the increase in net worth method was not justified and was improper, and that his determinations of deficiencies based thereon are erroneous and cannot be sustained. See . The petitioner could have and should have kept and maintained better and clearer records of the existence of and his dealings *240 in municipal bonds, particularly because all of his dealings in the bonds were cash transactions which did not clear through any of his bank accounts. His conduct was such as to give rise to doubts about his ownership and possession of the bonds, as well as about the sources of large amounts of cash which he used in the taxable years. The bonds were bearer bonds, and they were kept in safe-deposit boxes to which members of the Straehley family had access as well as petitioner. The situation, created by petitioner, was one which raised inferences which were adverse to petitioner. On the other hand, the petitioner gave testimony in this proceeding about his ownership and sales of the municipal bonds which stands unrefuted. Also, his testimony about his transactions in the bonds is corroborated by the testimony of a representative of the Provident Bank, by documentary evidence, and by cashier's checks of the Provident Bank bearing the dates and the amounts shown by the statements covering the bank's purchases. The cashier's checks were made payable to the petitioner. There is no evidence establishing that bonds in the above amount were owned at the end of 1945 by anyone other than the *241 petitioner, or that anyone other than the petitioner owned or received the proceeds from the sales thereof. We cannot disregard the unimpeached, competent, relevant, and corroborated testimony of the petitioner. ; . Also, care and restraint must be exercised in approving and applying use of the net worth method of determining taxable income. . The petitioner had the burden of proving error in the respondent's determinations of the amounts of his taxable net income for the years in question. , aff'd ; . The respondent's determinations were prima facie correct. However, it is concluded that the evidence adduced by the petitioner overcomes the prima facie correctness of the respondent's determinations of the amounts of taxable net income. The respondent did not introduce evidence which rebutted petitioner's evidence, or discredited his testimony. The respondent *242 had the burden of proving that part of each deficiency in tax, if any, was due to fraud with intent to evade tax. , certiorari denied . He failed to meet his burden of proof. It is held that no part of the deficiencies, if any, for the taxable years is due to fraud with intent to evade tax. The addition of 50 per cent penalties is reversed. The trial of this proceeding was upon issues arising out of respondent's determinations that petitioner realized income in the taxable years in the amounts shown by respondent's net worth statement. However, originally, the respondent determined a deficiency in income tax for 1948 without resort to a net worth statement; he disallowed several deductions taken in the return for 1948, and made other adjustments. Under the conclusions reached here, there remains the matter of disposing of the respondent's adjustments in the amount of net income reported for 1948, upon his audit of the return for that year. The petitioner is not at this time precluded from introducing evidence relating to those adjustments, if necessary, and upon appropriate motion, there can be *243 a further hearing to receive additional evidence with respect to the year 1948. However, the parties may be able to resolve disputed items relating to the correct net income for 1948 by entering into and filing with the Court a written stipulation, effect to which can be given thereafter by the parties in their respective recomputations under Rule 50. Also, petitioner now concedes that there are deficiencies in tax for 1946, 1948, and 1949 because he failed to include in income in his returns capital gains from sales in those years of municipal bonds. Petitioner states that his failure was due to the erroneous belief that the bonds were tax-exempt with respect to gains as well as interest, i.e., that they were tax-exempt in every respect. His explanation is accepted in the absence of proof that such failure was due to fraudulent intent, with respect to which there is no clear and convincing evidence. Petitioner concedes, further, that errors were made in his returns in some of the amounts of capital gains and losses, from sales of stock which were reported in his returns. Such errors may have been made in the return for 1951, which is before us, as well as in the returns for other *244 taxable years, although the record is not clear on this point. Under all of the circumstances, the parties should attempt to agree upon all of the adjustments to be made in taxable net income, as reported in the returns, for all of the taxable years under stipulations to be filed with the Court, and to be given effect by the parties in Rule 50 recomputations. Otherwise, an appropriate motion may be filed for further hearing with respect to petitioner's income as shown by his records and as reflected in his returns. Although respondent's use of the net worth method is not approved, it does not follow that there are no deficiencies in tax for all or some of the taxable years, as is explained above, and the parties will endeavor to agree upon the amounts of the deficiencies in their Rule 50 recomputations. See Decisions will be entered under Rule 50. Footnotes
1. By amended answer, the Commissioner made claim for increase in the deficiency for 1948 from $2,739.46 to $7,143.80, and he also made claim for 50 per cent addition to the increased deficiency under section 293(b), 1939 Code.↩
2. Figures for the years 1946-1950 are taken from Ex. 10. Figures for 1951 are not included in Ex. 10. Proceeds from sales in 1951 are taken from the income tax return, Ex. E.↩
*. Not disclosed by the record. ↩
3. The Provident Bank issued 13 cashier's checks to petitioner in 1945 in the total amount of $47,839.07.↩
*. Individual return. ↩
**. Joint returns.↩